UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ASIF OMAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-01047-TWP-DML |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This case relates to the scope of a credit reporting agency's obligations under the Fair Credit Reporting Act ("FCRA"). After facing an unfortunate and frustrating situation relating to the accuracy of his credit report, Plaintiff Asif Omar ("Mr. Omar") sued Defendant Experian Information Solutions, Inc. ("Experian"), a credit reporting agency, claiming that Experian violated numerous provisions of the FCRA by failing to conduct a reasonable investigation of the accuracy of a line item on his credit report. Both sides have filed Motions for Summary Judgment. For the reasons set forth below, Experian's motion (Dkt. #35) is **GRANTED** and Mr. Omar's cross motion (Dkt. #43) is **DENIED**.

### I. BACKGROUND

In June 2005, Mr. Omar signed a 12-month lease with Williamsburg Way, an apartment complex in Columbus, Indiana. He lived there and paid rent until December 2005. At that time, Mr. Omar traveled to Pakistan for several months to get married. The lease agreement allowed early termination with proper notice. Prior to his departure, Mr. Omar made early termination provisions and the property manager of Williamsburg Way completely released him from his

lease. Mr. Omar traveled to Pakistan, got married, and returned to the United States in April 2006.

Two months later, in June 2006, Mr. Omar was contacted by a collection agency, National Credit Systems ("NCS"). Troublingly, NCS erroneously sought Mr. Omar's "unpaid" rent under the Williamsburg Way lease. Mr. Omar tried to explain that Williamsburg Way had released him from the lease; however, he was unable to furnish NCS with the lease, a release, or any other corroborating statement from Williamsburg Way. According to Mr. Omar, NCS harassed him relentlessly, calling him up to ten times per day. Mr. Omar sought to clarify the dispute with Williamsburg Way, but, in the meantime, the apartment complex had been sold and the new owner told Mr. Omar that he did not have the number for the former owner and not to call again. To make matters worse, Mr. Omar (who was new to the United States and unfamiliar with its laws) mistakenly believed that he could go to jail for not paying this "debt."

After enduring a week-long barrage of telephone calls from NCS, Mr. Omar capitulated, paying $3,300.00 in unpaid rent that he did not actually owe. Upon receipt, NCS closed Mr. Omar's account and ceased all collection activities. Soon thereafter, NCS furnished information concerning Mr. Omar's account to Experian. In turn, Experian reported the status of the account as "Paid, closed" on Mr. Omar's credit report. At some subsequent point, Mr. Omar was denied credit and had a credit card limit reduced. After pulling his credit report, Mr. Omar realized that the NCS account was being reported – in his view, erroneously.

In late 2009, more than three years after paying $3,300.00 to NCS, Mr. Omar initiated multiple communications with Experian disputing its reporting of the NCS account. But, before detailing those communications, a quick review of Experian's dispute handling process is necessary. A consumer who disagrees with the accuracy or completeness of an item of

information in his credit report can submit a "dispute" of that information to a consumer reporting agency. *See* 15 U.S.C. § 1681i(a)(1)(A). Depending on the nature of the dispute, Experian chooses a dispute code that best "capture[s] the essential basis" of the dispute. A written statement of approximately 100 characters may also be added. This dispute code and written statement is transmitted by Experian to the "furnisher" of the information (in this case, NCS) electronically via an Automated Consumer Dispute Verification Form ("ACDV"). At that point, Experian awaits the furnisher's response, which typically instructs Experian to leave the item as it is, delete it, or change it in some manner.

In total, Mr. Omar (or his counsel) initiated six communications with Experian before filing this lawsuit, each of which is detailed in turn. First, on November 15, 2009, Mr. Omar wrote to Experian "to dispute an item in [his] credit report." Specifically, Mr. Omar claimed that he had paid off the NCS account "prior to collection proceedings or charge off" and requested that Experian investigate the accuracy of the account as reported. Experian received the letter on November 18, 2009. One day later, Experian sent an ACDV to NCS conveying Mr. Omar's dispute: "Claims paid the original creditor before collection status or paid before charge-off." On December 7, 2009, NCS responded, verifying that the account was accurately reported. On December 8, 2009, Experian mailed a consumer disclosure to Mr. Omar that relayed NCS's verification.

Second, On January 12, 2010, Mr. Omar wrote another letter, disagreeing with Experian's findings and explaining the background facts precipitating this confusion. From there, Mr. Omar "kindly request[ed] [Experian] to remove the invalid charge account from [his] credit report and update it accordingly." Experian received this letter on January 19, 2010. The next day, Experian once again conveyed Mr. Omar's dispute to NCS through an ACDV: "Claims

3

paid the original creditor before the collection status or paid before charge-off. I PAID THIS ACCOUNT TO THE ORIGINAL CREDITOR IN 12/2005. I LEFT THE COUNTRY AND WHEN I RETURNED I HAD AN UNKNOWN COLL." On February 1, 2010, NCS verified the account as accurately reported, and, that same day, Experian mailed a consumer disclosure to Mr. Omar.

Third, on January 22, 2010, Mr. Omar sent another letter, stating that he had disputed the item at issue to all three major credit reporting agencies and that Trans Union had removed the item from his credit report. Mr. Omar enclosed related materials from Trans Union's investigation. On January 28, 2010, Experian sent a letter to Mr. Omar notifying him that "[e]ach national consumer credit reporting company may interpret the requirements of the [FCRA] differently and each company has their own policies and guidelines for investigations." The letter ended by stating "we cannot update or delete information in our database based on the results of an investigation with another consumer credit reporting company nor can we dispute information for a consumer with another consumer credit company."

Fourth, on February 10, 2010, Mr. Omar contacted Experian by telephone to dispute his account and request a reinvestigation. The next day, Experian sent another ACDV to NCS relaying Mr. Omar's request. On February 24, 2010, NCS verified the account and Experian emailed the confirmation of this investigation to Mr. Omar.

Fifth, on June 2, 2010, Mr. Omar's lawyer sent Experian a letter describing the situation, claiming that the NCS account "does not belong on his credit report because he never owed this debt." The letter also included an affidavit from Mr. Omar, swearing to the facts surrounding this unfortunate situation. The letter also stated that "[i]f you question Mr. Mr. Omar's affidavit, please contact the apartment complex to see if they have documentation supporting this alleged

4

debt." Experian reviewed the letter and the affidavit and on June 9, 2010, mailed a letter to Mr. Omar's counsel stating that Experian had already investigated the NCS account and had provided results directly to Mr. Omar. The letter also stated "[i]f you have any supporting documentation regarding the disputed information, please forward that to my attention for review." Experian also informed Mr. Omar that he could submit a statement disputing the NCS account that would be published next to the trade line on his credit report. In other words, it is seemingly undisputed that Experian did not actually reinvestigate this dispute because it viewed this dispute as a repeat dispute.

Sixth, on June 17, 2010, Experian received another letter from Mr. Omar's counsel, dated June 15, 2010, again attaching Mr. Omar's affidavit and asking Experian to "contact the furnisher or the apartment complex to see if they have documentation supporting this alleged debt." Experian responded by writing that it had already investigated the disputed trade line on three separate occasions and that NCS has "verified the debt is accurately reporting as a Paid Collection." Again, Experian noted that Mr. Omar could add a statement disputing the item to his credit report and informed him that he could provide additional documentation regarding the disputed information. And, again, it appears undisputed that Experian did not conduct a follow-up examination, given that it viewed this as a repeat dispute.

In the end, Mr. Omar did not provide Experian with any additional documentation; nor did he provide a statement to be published on his credit report. Presumably viewing this dispute as an unbridgeable impasse, Mr. Omar filed the present lawsuit, "contending that Experian violated its duty to reinvestigate under 15 U.S.C. § 1681 by not conducting a reinvestigation in response to Plaintiff's June 2 and June 15 disputes." (Dkt. #43 at 7). Mr. Omar seemingly concedes that he did not suffer "actual damages" stemming from Experian's alleged violations;

instead, he is seeking statutory damages (between $100.00 and $1,000.00) and punitive damages for Experian's purportedly "willful" conduct. *See* 15 U.S.C. § 1681n(a).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

Mr. Omar's claims arise from 15 U.S.C. § 1681i(a)(1), (2), and (4). Specifically, Mr. Omar argues that: (1) Experian violated § 1681i(a)(1) "by failing to conduct a reasonable

6

reinvestigation in response to" his June 2, 2010, and June 15, 2010 communications; (2) Experian violated § 1681i(a)(2) by failing "to timely notify the furnisher of [Mr. Omar's June 2 and June 15, 2010] dispute[s] and include all relevant information regarding the dispute[s] that Experian received" from Mr. Omar; and (3) Experian violated § 1681i(a)(4) "by failing to review and consider all relevant information submitted by" Mr. Omar with his June 2 and June 15, 2010 disputes. (Dkt. #43 at 1-2.)  Put more succinctly, "Plaintiff contends that Experian willfully violated its duty to reinvestigate," (Dkt. #43 at 7), which is found at 15 U.S.C. § 1681i(a)(1)(A):

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

A *prima facie* showing under § 1681i consists of the following elements: (1) the plaintiff's credit report contains inaccurate or incomplete information; (2) the plaintiff notified the consumer reporting agency of the inaccurate or incomplete information; (3) the dispute is not frivolous or irrelevant; (4) the consumer reporting agency failed to respond to the dispute with a reasonable reinvestigation; and (5) the failure to conduct a reasonable reinvestigation was willful. *See, e.g., Carvalho v. Equifax Information Services, LLC*, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008).

The Court's analysis effectively begins and ends with the first element: plaintiff's credit report did not contain inaccurate or incomplete information. It is seemingly self-evident that a plaintiff cannot have a viable claim under the FCRA unless his credit report is somehow inaccurate. *See Kuehling v. Trans Union, LLC*, 137 Fed. Appx. 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Keuhling

cannot establish that Trans Union violated the FCRA . . . . In the absence of evidence that [the defendant] disclosed incorrect information to a third party, [plaintiff] cannot even show that it violated the Act's reinvestigation requirement.") (citation and internal quotations omitted); *see also DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008); *Carvalho v. Equifax*, 629 F.3d 876, 890 (9th Cir. 2010). Here, however, there is nothing inaccurate about Mr. Omar's Experian credit report, which published the status of his NCS account as "Paid, closed." After all, there is no dispute that the account was "paid" and subsequently "closed." Moreover, contrary to Mr. Omar's contentions, the NCS account was unquestionably a "collection" account, even if Mr. Omar never actually should have been subject to NCS's unfortunate collection tactics. As Experian notes in its reply brief, "[b]y Plaintiff's own admission, NCS is a collection agency that engaged in efforts to collect money from Plaintiff, and Plaintiff paid the money NCS sought in collection." (Dkt. #51 at 8).

To this, Mr. Omar counters that the Experian report was inaccurate and incomplete because the "the NCS account never should have been created in the first place, since [he] fully fulfilled his contractual agreement with Williamsburg Way." (Dkt. #43 at 8). But this argument presupposes that Experian had an obligation to dig into the weeds of Mr. Omar's dispute with Williamsburg Way and effectively adjudicate who was right and who was wrong, and then follow suit with NCS. Unfortunately for Mr. Omar, this position overstates the nature of Experian's obligation. Here, Experian was a third-party who was merely reporting what it was repeatedly told was accurate by the furnisher, NCS. Simply stated, Experian is a merely a credit reporting agency—not a judge or jury with authority to resolve legal disputes.

On this point, numerous circuit courts have cautioned that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts." *See, e.g.,*

8

*Carvalho*, 615 F.3d at 892; *DeAndrade*, 523 F.3d at 68 (FCRA actions against credit reporting agencies are not the proper vehicle for launching collateral attacks against third parties). As the Ninth Circuit has recognized, a credit reporting agency is not in nearly as good a position as creditors or furnishers "to make a thorough investigation of a disputed debt[.]" *Carvalho*, 629 F.3d at 892 (citations and internal quotations omitted). In this vein, the First Circuit's decision in *DeAndrade* is particularly instructive.

In that case, plaintiff DeAndrade purchased new windows for his home using mortgage financing arranged by the seller of the windows. 523 F.3d at 63. When DeAndrade and his wife obtained and reviewed the mortgage documents, they were "shocked" to find that the documents granted a mortgage on their residence, and that their signatures on the documents appeared to have been forged. *Id.* DeAndrade stopped payment on the mortgage, causing the mortgagee, KeyBank, to notify the major credit reporting agencies (Trans Union, Experian, and Equifax) of the delinquency. *Id.* at 64. The credit reporting agencies updated DeAndrade's credit report accordingly. *Id.* Subsequently, DeAndrade sent a reinvestigation request and 49 pages of supporting documents to the reporting agencies, claiming that the mortgage had been obtained fraudulently. *Id.* Trans Union sent an ACDV notice to KeyBank but declined to transmit any of the supporting documentation provided by the DeAndrades. *Id.* KeyBank responded that the information was accurate, and Trans Union notified DeAndrade of the results of its reinvestigation. *Id.* In holding that DeAndrade had not made the *prima facie* showing of inaccuracy required to state a claim under § 1681i, the court concluded that DeAndrade was, in reality, attacking the validity of the mortgage, and that "[w]hether the mortgage is valid turns on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the

9

loan." *Id.* at 68. So, in essence, this was "a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA." *Id.* at 68.

That reasoning applies with considerable force here; Mr. Omar effectively asks Experian to make a legal determination about the validity of the debt flowing from his lease with Williamsburg Way. Moreover, here, Mr. Omar never provided Experian with any evidence, outside of his own statements, showing a successful resolution of the dispute with Williamsburg Way or calling into question the accuracy of the NCS account. As Experian notes, "Plaintiff's claims against Experian place it in the middle of a contract dispute between Plaintiff and those holding his debts" and "courts have been loath to allow consumers to make such collateral attacks[.]" (Dkt. #36 at 14).

The only authority that gives the Court pause is the Seventh Circuit's decision in *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994), which held that "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information, in this case the Judgment Docket." *Id.* at 287. On this point, the Seventh Circuit noted as follows:

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

*Id.* In the Court's view, however, *Henson* is distinguishable. In that case, two credit reporting agencies reported that a money judgment had been entered against the plaintiff. *Id.* at 285. The plaintiff disputed the reporting of the judgment, and a review of court documents conclusively established that no money judgment was rendered against him. *Id.* ("The court documents in question conclusively establish that no money judgment was rendered against [the plaintiff].").

10

In other words, in that case, the plaintiff was not really collaterally attacking the validity of debt, since the *invalidity* of the debt was obvious from a review of court records.  Here, by contrast, outside of his own statements, Mr. Omar has not given Experian any information suggesting that the item in his credit report was false or inaccurate.  To the contrary, Mr. Omar has only given Experian enough information that would allow it to wade into a dispute that Mr. Omar has with Williamsburg Way and, in turn, NCS.  This is, in the Court's opinion, a meaningful distinction. *See Carvalho*, 629 F.3d at 891-92; *DeAndrade*, 523 F.3d at 68 (affirming summary judgment because plaintiff's real dispute was with KeyBank, the furnisher of the information, and not Trans Union, the credit reporting agency).

The last point relates to the specific substance of Mr. Omar's June 2 and June 15, 2010 disputes.  Experian contends that these are "repeat disputes"; Mr. Omar disagrees.  Notably, if a credit reporting agency determines that a dispute is frivolous or irrelevant, then it has no duty to reinvestigate.  *See* 15 U.S.C. § 1681i(a)(3)(A).  Moreover, a "repeat" dispute is frivolous if the consumer provides no additional relevant information with it.  *See* FTC Official Staff Commentary on the FCRA, 16 C.F.R. § 611.11 (1970) ("[t]he agency is not required to repeat a reinvestigation that it has previously conducted simply because the consumer reiterates a dispute about the same item of information, unless the consumer provides a*dditional evidence that the item is inaccurate or incomplete*, or alleges changed circumstances.") (emphasis added); *see also McCelland v. Experian Information Solutions*, *Inc.*, 2006 WL 2191973, at *6 (N.D. Ill. July 28, 2006) ("Plaintiff's second, third, and fourth letters were no more helpful – each subsequent letter merely repeated the 'not my account' assertion, without providing any additional information."). Mr. Omar claims that he provided "additional relevant information" with these two communications by: (1) attaching a signed affidavit signed under penalties of perjury; (2)

providing the contact information of Williamsburg Way; and (3) explaining that Williamsburg Way will not have documentation supporting the alleged debt. In Mr. Omar's view, these additional inclusions triggered Experian's duty to reinvestigate.

The Court disagrees. These two communications were, substantively speaking, a mere rehash of the previous disputes. Indeed, Mr. Omar admits that his affidavit "*substantively relayed the same information as prior disputes*[.]" (Dkt. #43 at 5) (emphasis added). The fact that the affidavit was done under penalties of perjury is of no import. Swearing an oath might help ensure the veracity of a statement, but it does nothing to add to the *substance* of the statement. In other words, the fact that Mr. Omar attached a sworn affidavit did not help Experian uncover any substantively different information. As Experian notes, "Plaintiff's affidavit employed nearly identical language to allege the *same dispute* with respect to the *same account* and request the *same relief* from Experian." (Dkt. #36 at 19). And, on this point, Mr. Omar has not provided any authority that an affidavit is meaningfully different than a letter in the context of disputing the accuracy of items found on a credit report.

Next, the Court finds that the inclusion of Williamsburg Way's contact information and the fact that it may not have had substantiating information for the debt is not enough to change things. Providing Williamsburg Way's contact information only gave Experian an avenue towards injecting itself into a potential squabble determining the legal validity of Mr. Omar's debt – something that, as discussed above, is outside the province of a credit reporting agency. *See, e.g., Carvalho*, 629 F.3d at 892 ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade*, 523 F.3d at 68 (noting that plaintiff "crossed the line between alleging a factual deficiency that [the credit reporting agency] was oblig[ated] to investigate pursuant to the FCRA and launching an

12

impermissible collateral attack against a lender by bringing an FCRA claim against a [credit] reporting agency."). Mr. Omar has recounted his own difficulties in finding information to verify his position regarding early termination of the lease. Moreover, according to Mr. Omar, Williamsburg Way is under new ownership, the new owners had no knowledge of the debt and no desire to help him resolve this dispute. The Court has been given no evidence to suggest that Experian would have been able to extract any more factual information from Williamsburg Way than Mr. Omar, prior to him filing this litigation. Simply stated, it is undisputed that "any attempts to contact Williamsburg Way's new management would have yielded no new relevant information." (Dkt. #51 at 15); *see DeAndrade*, 523 F.3d at 68 (under § 1681i, "the decisive inquiry is whether the defendant credit bureau <u>could have uncovered</u> the inaccuracy if it had reasonably reinvestigated the matter.") (emphasis added; citation and internal quotations omitted).

In sum, Mr. Omar faced a difficult and frustrating situation relating to his credit report. Indeed, reading the facts of this case is truly disheartening. The Court certainly has sympathy for Mr. Omar. However, Mr. Omar's quarrel is directed towards the wrong party. Rather than addressing this issue directly with Experian, Mr. Omar should have remedied the situation with Williamsburg Way or NCS. Once he did that, he could have brought substantiating evidence to Experian, who then would have been required to fix his credit report. Unfortunately, this never occurred. As the Ninth Circuit has convincingly noted, a consumer disputing the validity of a debt should take that issue up with the source of the confusion or the furnisher, and the failure to do so is "no fault of the" credit reporting agency. *Carvalho*, 629 F.3d at 892. Accordingly, the Court must find in favor of Experian.

## IV. CONCLUSION

For the reasons set forth above, Experian's Motion for Summary Judgment (Dkt. #35) is GRANTED and Mr. Omar's Motion for Summary Judgment (Dkt. #43) is DENIED. Final judgment will accompany this entry.

SO ORDERED. 07/18/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Nelson D. Alexander
FROST BROWN TODD LLC
nalexander@fbtlaw.com, kmcpheeters@fbtlaw.com, sbailey@fbtlaw.com

Michele Lorbieski Anderson
FROST BROWN TODD LLC
mlanderson@fbtlaw.com, jducharme@fbtlaw.com

Carl W. Butler
FROST BROWN TODD LLC
cbutler@fbtlaw.com, pthacker@fbtlaw.com

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com, tammie@robertdufflaw.com